# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
#### 3:12-cv-007-RJC

| | | |
|---|---|---|
| **MARKESE D. RICE,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **ROY COOPER,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| ———————————————————— | ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment. (Doc. No. 7).

## I.    BACKGROUND

Petitioner is a state court prisoner who, on March 10, 2009, in Mecklenburg County Superior Court, the Honorable Timothy L. Patti presiding, was found guilty after a jury trial of first-degree murder. (Doc. No. 8-3 at 37). The trial court sentenced Petitioner to life imprisonment without the possibility of parole. (Id. at 38). Attorneys Anthony Monaghan and Jean Lawson represented Petitioner at trial. Petitioner appealed, and on April 20, 2010, the North Carolina Court of Appeals affirmed. State v. Rice, 203 N.C. App. 573, 692 S.E.2d 890 (2010). Geoffrey W. Hosford represented Petitioner on appeal.

On May 25, 2010, Petitioner filed a petition for discretionary review in the North Carolina Supreme Court. (Doc. No. 8-7). That court denied the petition on August 26, 2010. (Doc. No. 8-8). On July 26, 2011, Petitioner filed a pro se motion for appropriate relief ("MAR"). (Doc. No. 8-9). On September 16, 2011, the MAR Court, the Honorable Richard D. Boner presiding, denied Petitioner's MAR in a summary denial. (Doc. No. 8-10 at 2). The MAR Court's Order stated that

Petitioner's claims were being denied because "identical issues could have been raised on appeal or were resolved against him by the Court of Appeals."[1] (Id. at 2). Thus, the MAR Court denied Petitioner's claims as procedurally defaulted and, alternatively, on the merits. See N.C. GEN. STAT. § 15A-1419(a)(3) and (b) (claim shall be denied when defendant was in an adequate position to have raised it in a previous appeal but did not do so, absent cause and prejudice or fundamental miscarriage of justice, i.e., actual innocence).

On November 3, 2011, Petitioner filed a petition for writ of certiorari in the North Carolina Court of Appeals seeking review of the MAR Court's order. (Doc. No. 8-11). On November 18, 2011, the North Carolina Court of Appeals denied Petitioner's certiorari petition. (Doc. No. 8-12). Petitioner mailed his § 2254 petition to this Court on January 3, 2012, and it was stamp-filed on January 6, 2012.[2] (Doc. No. 1).

Petitioner brings the following grounds for relief in his § 2254 petition: (1) the trial court erred in allowing the State's witness Edna Diggs-Harrison to testify regarding statements made to her by the victim; (2) the trial court erred in denying a motion for mistrial made after Diggs-Harrison testified concerning statements made to her by the victim; (3) the trial court erred in denying Petitioner's request to prohibit the State from arguing that the victim's statement to Diggs-Harrison

---

[1] Petitioner raised the following three assignments of error on direct appeal: (1) the admission of the victim's statement to another person that Petitioner had threatened to kill him was error because the statement was inadmissible hearsay; (2) the trial court committed reversible error by permitting the prosecutor to state during closing arguments that Petitioner had remained silent and had not provided evidence that anyone else had committed the murder; and (3) the trial court committed error by failing to instruct the jury on voluntary manslaughter. State v. Rice, 203 N.C. App. 573, 692 S.E.2d 890 (2010).

[2] Respondent filed the pending summary judgment motion on March 1, 2012. On April 26, 2012, the Court issued an Order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of his obligation to respond to the summary judgment motion. (Doc. No. 9).

constituted proof of premeditation and deliberation; (4)(a) Petitioner's confession was obtained in violation of his right against self-incrimination; (b) his trial counsel were ineffective for failing to challenge the propriety of his confession; (c) his appellate counsel was ineffective for failing to challenge the same on appeal; (5)(a) Petitioner's conviction was obtained by an unconstitutionally selected jury; (b) his trial counsel were ineffective for failing to challenge the unconstitutionally selected jury; (c) his appellate attorney was ineffective for failing to challenge the same on appeal; (6) trial counsel was ineffective for failing to hire a scientific expert; (7)(a) his right to present evidence in his own defense was violated when the trial court would not allow him to present scientific evidence that would have exonerated him; (b) his appellate counsel was ineffective for failing to challenge on appeal the trial court's failure to allow him to present exculpatory scientific evidence; and (8) the trial court erred in denying his motion indicating that the State's expert had not complied with discovery laws.

## II.   FACTS

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> For roughly 10 years, defendant was in a romantic relationship with Twanda Perry and the couple had four children during the time they were together. Although they had broken up several times during their 10 years together, their relationship ended "for good" sometime in June 2007. Defendant asked Ms. Perry to get back together with him during the summer and fall of 2007, but she refused.
>
> Ms. Perry met Mr. Deas in July 2007 at Carolinas Medical Center in Charlotte, where they both worked. Ms. Perry and Mr. Deas began seeing each other and by October 2007 Ms. Perry considered Mr. Deas to be her boyfriend. Defendant became "agitated" when defendant learned about Ms. Perry's relationship with Mr. Deas. As a result, Ms. Perry did not tell defendant about the extent of her relationship with Mr. Deas.
>
> On 18 October 2007, Ms. Perry planned to pick up Mr. Deas from the hospital in the afternoon and drive him to his second job. Before picking up Mr. Deas, Ms. Perry talked with defendant and agreed to meet him at a gas station so that he could pay for her to get some gas in order for her to pick up their children later

that day. At the gas station, Ms. Perry became "frustrated" with defendant because she believed that he had offered to buy her gas as a "ploy to see [her] or talk to [her]." Ms. Perry left the gas station without getting any gas and drove around to avoid defendant following her before driving to the hospital to pick up Mr. Deas.

As Ms. Perry pulled up to the hospital and Mr. Deas approached her car, Ms. Perry received a call on her cell phone from defendant, in which he said: "I got you, I got you." Ms. Perry then saw defendant's car pull up and park directly behind her's. Defendant, his brother, Lamar Rice, and his nephew, Frankie Jackson, got out of defendant's car and confronted Ms. Perry and Mr. Deas. Defendant, Lamar Rice, and Mr. Jackson tried to prevent Mr. Deas from getting into Ms. Perry's car. Lamar Rice tried to intimidate Ms. Perry and Mr. Deas and was the "most aggressive" during the confrontation, while defendant and Mr. Jackson acted "cool." During the encounter, defendant said "sarcastic [ally]" to Mr. Deas that he "wanted to meet his kids' future stepfather" and tried to shake Mr. Deas' hand. Ms. Perry felt intimidated by defendant's actions and both she and Mr. Deas were scared. Ms. Perry knew that defendant had a 9mm handgun and kept it with him "all the time."

Mr. Deas asked Ms. Perry to pick him up at the front entrance to the hospital and went back inside. While he was running down the escalator in the hospital lobby, Mr. Deas saw a friend of his, Edna Diggs-Harrison, who was the hospital's security dispatcher. Mr. Deas was sweating and looked upset, so Ms. Diggs-Harrison asked him if something was wrong. Mr. Deas told Ms. Diggs-Harrison that defendant had just threatened to kill him and that he needed to find a security officer. After saying goodbye, Ms. Diggs-Harrison walked back to her office while Mr. Deas walked out the front entrance of the hospital. Ms. Perry was waiting for him; he got into her car and she drove him to his second job.

Sometime later that evening, Ms. Perry met defendant at another gas station to pick up one of the children. While at the gas station, defendant told Ms. Perry that Mr. Deas was a "crack head" and pleaded with her to get back together with him.

Later that night, defendant called Ms. Perry on her cell phone, but she did not pick up. Around 11:00 p.m., defendant, his brother, and his nephew, started driving past Ms. Perry's mother's house, where Ms. Perry lived, to see if her car was there. On at least two occasions, they saw that her car was in the driveway and drove back home. When they drove past the house the final time, around midnight, Ms. Perry's car was not in the driveway, so they decided to drive to Mr. Deas' residence to look for Ms. Perry.

Around 11:30 p.m. on 18 October 2007, Ms. Perry left her children at her mother's house and went to pick up Mr. Deas from his night job. Ms. Perry picked up Mr. Deas from work around midnight and they smoked some marijuana before driving to Mr. Deas' sister's house, where he lived. Mr. Deas went inside to take a shower while Ms. Perry waited in her car. When he came back outside, he and Ms.

Perry had sex in her car. Afterward, Ms. Perry heard a noise at the end of the street and tried to dress quickly, afraid that it was defendant. Defendant, with his brother and nephew passed out in the car, drove past Ms. Perry's car and parked behind her. She tried to start the car to leave because she was afraid of what might happen, but Mr. Deas started getting out of the car to go inside the house. Defendant got out of his car, walked up to Mr. Deas, said "Hey, Rich," and then shot him three times in the chest from "an arm's length away." Defendant then got back into his car, after hesitating for a moment, and drove away.

Ms. Perry called 911 and at approximately 1:54 a.m. on 19 October 2007, officers with the Charlotte-Mecklenburg Police Department arrived, as well as an ambulance. The paramedics pronounced Mr. Deas dead at 1:57 a.m. Ms. Perry told the police that defendant shot Mr. Deas and gave them defendant's address. Later that morning, police went to defendant's residence; defendant was not arrested, but went with the police to the police station for questioning. At the police station, defendant gave a statement that he had, in fact, shot Mr. Deas.

State v. Rice, 203 N.C. App. 573, 692 S.E. 2d 890 (2010).

## III.  STANDARD OF REVIEW

A.  Summary Judgment Standard

Summary judgment is appropriate in those cases in which there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991).  Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

B.  Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the petition for writ of habeas corpus under the requirements set forth in 28 U.S.C. §

2254.  Section 2254(d) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the
>
> judgment of a State court shall not be granted with respect to any claim that was adjudicated
>
> on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,
>
> clearly established Federal law, as determined by the Supreme Court of the United States;
>
> or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in
>
> light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A state court decision is contrary to clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [an opposite result][.]"  Williams v. Taylor, 529 U.S. 362, 405 (2000); Lewis v. Wheeler, 609 F.3d 291, 300 (4th Cir. 2010) (quoting Williams, 529 U.S. at 405).  A state court unreasonably applies federal law when it "identifies the correct governing legal rule from th[e Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case."  Williams, 529 U.S. at 407; Lewis, 609 F.3d at 300-01 (stating that a state court unreasonably applies federal law when it "extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply[ ]") (citation and quotation marks omitted).

"[A]n unreasonable application of federal law is different from an incorrect application of federal law" for § 2254(d)(1) purposes.  Williams, 529 U.S. at 410.  The former requires a

"substantially higher threshold" to obtain relief than does the latter. Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A state court's determination that a claim fails on its merits cannot be overturned by a federal habeas court "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

A habeas court, therefore, must "determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." Richter, 131 S. Ct. at 786. A petitioner has the burden of establishing that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S. Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10-6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

A petitioner may overcome a finding of procedural default by showing cause and prejudice

arising from the asserted constitutional error. <u>McCarver v. Lee</u>, 221 F.3d 583, 591-92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." <u>Id.</u> at 591 (quoting <u>McCleskey v. Zant</u>, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>Id.</u> at 592 (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. <u>Hedrick v. True</u>, 443 F.3d 342, 359 (4th Cir. 2006) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." <u>Dretke v. Haley</u>, 541 U.S. 386, 392-94 (2004) (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 494-96 (1986)).

## IV. DISCUSSION

### A. Petitioner's Grounds 1, 2, and 3

Petitioner contends in Grounds 1, 2, and 3 that (1) the trial court erred in allowing the State's witness Edna Diggs-Harrison to testify regarding statements made to her by the victim, Deas; (2) the trial court erred in denying a motion for mistrial made after Diggs-Harrison testified concerning statements made to her by Deas; and (3) the trial court erred in denying Petitioner's request to prohibit the State from arguing that Deas' statement to Diggs-Harrison constituted proof of premeditation and deliberation.

Petitioner's Grounds 1, 2, and 3 all concern the trial court's admission into evidence of a

statement by the victim, Deas, to a coworker, Diggs-Harrison, that Petitioner had threatened to kill

Deas. Deas made this statement to Diggs-Harrison on the day that Deas was killed. The North

Carolina Court of Appeals summarized the events leading to the statement:

> On 18 October 2007, Ms. Perry planned to pick up Mr. Deas from the hospital in the afternoon and drive him to his second job. Before picking up Mr. Deas, Ms. Perry talked with defendant and agreed to meet him at a gas station so that he could pay for her to get some gas in order for her to pick up their children later that day. At the gas station, Ms. Perry became "frustrated" with defendant because she believed that he had offered to buy her gas as a "ploy to see [her] or talk to [her]." Ms. Perry left the gas station without getting any gas and drove around to avoid defendant following her before driving to the hospital to pick up Mr. Deas. As Ms. Perry pulled up to the hospital and Mr. Deas approached her car, Ms. Perry received a call on her cell phone from defendant, in which he said: "I got you, I got you." Ms. Perry then saw defendant's car pull up and park directly behind her's. Defendant, his brother, Lamar Rice, and his nephew, Frankie Jackson, got out of defendant's car and confronted Ms. Perry and Mr. Deas. Defendant, Lamar Rice, and Mr. Jackson tried to prevent Mr. Deas from getting into Ms. Perry's car. Lamar Rice tried to intimidate Ms. Perry and Mr. Deas and was the "most aggressive" during the confrontation, while defendant and Mr. Jackson acted "cool." During the encounter, defendant said "sarcastic [ally]" to Mr. Deas that he "wanted to meet his kids' future stepfather" and tried to shake Mr. Deas' hand. Ms. Perry felt intimidated by defendant's actions and both she and Mr. Deas were scared. Ms. Perry knew that defendant had a 9mm handgun and kept it with him "all the time."

> Mr. Deas asked Ms. Perry to pick him up at the front entrance to the hospital and went back inside. While he was running down the escalator in the hospital lobby, Mr. Deas saw a friend of his, Edna Diggs-Harrison, who was the hospital's security dispatcher. Mr. Deas was sweating and looked upset, so Ms. Diggs-Harrison asked him if something was wrong. Mr. Deas told Ms. Diggs-Harrison that defendant had just threatened to kill him and that he needed to find a security officer. After saying goodbye, Ms. Diggs-Harrison walked back to her office while Mr. Deas walked out the front entrance of the hospital. Ms. Perry was waiting for him; he got into her car and she drove him to his second job.

State v. Rice, No. COA09-1099, 2010 WL 1542170 (4th Cir. Apr. 20, 2010).

At Petitioner's trial, Digg-Harrison testified that when she saw Deas in the hospital lobby

on the day Deas was killed, Deas had said to her, "I just had a fight with this nigger up at the staff

entrance about a bitch, and it wasn't even like that. And I told him he needed to talk to his girl

because it's not even like that. And he was saying like–he told me if it wasn't so many people around he would kill me now." Id. at *3. Petitioner argued on direct appeal that this statement was inadmissible hearsay. The North Carolina Court of Appeals held that although the statement was hearsay, it was admissible as an excited utterance under North Carolina Rule of Evidence 803(2). Id. The North Carolina Court of Appeals specifically noted that Petitioner "[did] not assert constitutional error."[3] Id. at *5. The state appellate court went on to hold that, even if Deas' statements to Diggs-Harrison were improperly admitted, Petitioner suffered no prejudice because the overwhelming evidence supported Petitioner's conviction.

This Court will dismiss Petitioner's Grounds 1, 2, and 3, as all three grounds seek to have this court re-examine state court determinations on state law questions, which a federal court may not do on habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). With regard to state court determinations on state law questions, a federal habeas court's review is limited to assessing whether the alleged evidentiary error "so infected the entire trial that the resulting conviction violated due process." Estelle, 502 U.S. at 67-68; Henderson v. Kibbe, 431 U.S. 145, 154 (1977) (providing that state court jury instruction must render entire trial fundamentally unfair to warrant federal habeas relief). Even assuming that the admission of the above-cited statement was error, the admission did not render Petitioner's trial unfair, given the other, overwhelming evidence of his guilt. The state court's adjudication as to Petitioner's Grounds 1, 2, and 3 was neither contrary to nor an unreasonable application of clearly established Supreme Court law.

---

[3] It does not appear that Petitioner is making a Confrontation Clause claim before this Court either. Even if his Petition could be construed to state such a claim, the claim would have to be denied as defaulted and on the merits. See United States v. Jordan, 509 F.3d 191, 201 (4th Cir. 2007) (To our knowledge, no court has extended Crawford to statements made by a declarant to friends or associates).

In sum, the Court dismisses Petitioner's Grounds 1, 2, and 3.

B.      Petitioner's Grounds 4 and 5

In Petitioner's Ground 4, he contends that (a) his confession was obtained in violation of his right against self-incrimination; (b) his trial counsel were ineffective for failing to challenge the propriety of his confession; and (c) his appellate attorney was ineffective for failing to challenge the same on appeal. In Petitioner's Ground 5, he contends that (a) his conviction was obtained via an unconstitutionally selected jury; (b) his trial counsel were ineffective for failing to challenge the unconstitutionally selected jury; and (c) his appellate attorney was ineffective for failing to challenge the same on appeal.

Petitioner raised Grounds 4(a), 4(b), 5(a), and 5(b) in his MAR. (Doc. No. 8-9). In a summary denial, the MAR Court denied the claims as procedurally barred for failure to raise them on direct appeal and, alternatively, on the merits. (Doc. No. 8-10). The MAR Court's dismissal of these claims based on Petitioner's failure to raise them on direct appeal constitutes an adequate and independent state procedural bar precluding federal habeas review. See N.C. Gen. Stat. § 15A-1419(a)(3) and (b); see also Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) (finding that a claim was procedurally barred from federal habeas review where the state post-conviction court found that Petitioner was in an adequate position to have raised the claim on appeal but did not do so); McCarver, 221 F.3d at 593 (finding that a claim was procedurally barred from federal habeas review where the state post-conviction court denied the claim on the alternative ground of procedural bar because it had not been raised on direct appeal).

To show cause and actual prejudice for the default, Petitioner asserts in Grounds 4(c) and 5(c) that his appellate counsel was ineffective for failing to raise Grounds 4(a) and 5(a) on direct

appeal.[4] Petitioner's assertion of ineffective assistance of appellate counsel, however, is inadequate to excuse the default of Grounds 4(a) and 5(a) because the ineffective of assistance of counsel claims are themselves procedurally defaulted because Petitioner did not raise the ineffective assistance of appellate counsel claims in his MAR.  See Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (providing that an ineffective assistance of counsel "claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").  Therefore, if he were to raise the ineffective assistance of appellate counsel claims in a second MAR, the state court would find the ineffective assistance of appellate counsel claims procedurally barred by North Carolina's mandatory, and adequate and independent, procedural bar statute, N.C. Gen. Stat. §§ 15A-1419(a)(1), (a)(3), & (b).  Accordingly, Petitioner's ineffective assistance of appellate counsel claims are procedurally defaulted and do not excuse the procedural default of Grounds 4(a) and 5(a). In sum, Grounds 4(a) and 5(a) are procedurally defaulted, and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice for the procedural default.

The Court further notes that, even if Grounds 4(a) and 5(a) were not procedurally defaulted, Petitioner would not be entitled to relief on the merits.  First, Petitioner contends in 4(a) that his confession was obtained in violation of his right against self incrimination.  Petitioner argues specifically that (1) there was error because he did not receive a hearing regarding his confession; (2) the transcript of his statement was corrected three times before trial, and it still did not match;

---

[4]  Petitioner does not contend in his petition that appellate counsel was ineffective for failure to raise the claim of ineffective assistance of trial counsel, Petitioner's Grounds 4(b) (his trial counsel were ineffective for failing to challenge the propriety of his confession) and Grounds 5(b) (his trial counsel were ineffective for failing to challenge the unconstitutionally selected jury).  In any event, as the Court concludes, infra, as there is no merit to Petitioner's Grounds 4(a) and 5(a), it follows that Petitioner's trial counsel were not ineffective for challenging these alleged errors by the trial court.

and (3) he was not read his Miranda rights before confessing. Petitioner's contentions are without

merit. First, Petitioner was not entitled to an evidentiary hearing on the admissibility of his

confession because he did not file a motion to suppress or argue that his confession was involuntary.

Next, a review of Petitioner's trial transcript indicates that the only mistakes in the transcript of the

confession were minor typographical errors. (Doc. No. 8-15 at 138). Furthermore, both the

transcript and the video recording of Petitioner's confession were introduced into evidence. (Id. at

144).

Regarding Petitioner's third allegation in Ground 4(a) regarding his Miranda rights,

Petitioner argues that he is entitled to relief for the following reasons:

> He first denied any involement [sic] in the shooting but was told by Detecive [sic]
> that Ms Perry had told what happened and they had enough to charge me[.] [He] was
> not advised of [his] Miranda Right[.] So [he] admitted to shooting. [After he
> confessed, he] was told [he] was no longer free to leave the interrogation last for
> hours.

(Doc. No. 1 at 6). Neither the above allegations nor any other evidence admitted at trial regarding

the taking of Petitioner's confession show a constitutional violation. A defendant's Miranda rights

are implicated only when he is in custody and being interrogated. Miranda v. Arizona, 384 U.S.

436, 477-78 (1966); California v. Beheler, 463 U.S. 1121, 1125 (1983) ("Although the

circumstances of each case must certainly influence a determination of whether a suspect is 'in

custody' for the purposes of receiving of Miranda protection, the ultimate inquiry is simply whether

there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal

arrest.") (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).

Here, testimony at Petitioner's trial showed that when Petitioner's police interview began

he was not arrested, nor was there a restraint on his freedom of movement of the degree associated

with a formal arrest. One of the interviewing officers testified that Petitioner was not in custody;

that he was not handcuffed; that he was not shackled; and that the door to the room was open, allowing him to come and go to the restroom and to get water or whatever else he needed. (Doc. No. 8-15 at 123). Petitioner was told that he was not in custody, that he was at the station voluntarily, and that he was free to leave at any time. (Id. at 124). Petitioner initially denied involvement in the shooting. (Id. at 130). However, when police officers asked Petitioner to "own up" to what he did, Petitioner asked to call his mother, which he was allowed to do. (Id. at 131). After Petitioner ended his call with his mother, he told detectives that he was going to tell them what happened. (Id. at 131-32). Petitioner then confessed to shooting Deas. (Id.). At that point, detectives told Petitioner that he was no longer free to leave and read him his Miranda rights. (Id. at 133-34). This evidence shows that Petitioner was not in custody when he confessed, and a Miranda warning was therefore not required at that time. Thus, the trial court properly admitted Petitioner's confession. In sum, even if Ground 4(a) were not procedurally defaulted, the Court would dismiss the claim on the merits. The MAR Court's alternative adjudication of this claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. That is, there is no United States Supreme Court precedent that would have required the MAR Court to find a constitutional error.

In Ground 5(a), Petitioner makes two allegations that appear to be claims of juror bias. First, Petitioner alleges that jurors Pamela Diggins and Michael Durden were biased because they worked at the same place as the victim Deas and the victim's family members. Second, Petitioner notes that, despite his attorneys' pretrial motion to limit juror-witness conduct, one of the attorneys informed the trial court during trial that he saw ten jurors and witnesses talking outside the courtroom.

Even if Ground 5(a) were not procedurally defaulted, the Court would dismiss the claim on

the merits. First, Ground 5(a) is conclusory and unsupported. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). Second, Petitioner's allegations of juror bias are meritless. The Sixth Amendment guarantees the right to an impartial jury that renders a verdict based on the evidence presented at trial. Irvin v. Dowd, 366 U.S. 717, 722 (1961). In North Carolina, once selected and impaneled, a juror must "swear or affirm that he will truthfully and without prejudice or partiality try all issues in criminal or civil actions that come before him and render true verdicts according to the evidence." N.C. GEN. STAT. § 9-14. Jurors are presumed to follow the law, Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 354 (4th Cir. 1994), and they are further presumed to follow the trial court's instructions, State v. Richardson, 346 N.C. 520, 538, 488 S.E.2d 148, 156 (1997).

Regarding Petitioner's allegations that certain jurors worked with the victim and/or the victim's family members, the trial transcript shows that Pamela Diggins, Juror #12, worked at Presbyterian Hospital as a medical transcriptionist, and Michael Burden, Juror #1, worked in real estate. (Doc. No. 8-13 at 128; 200-01). There was no indication in the jury selection that Ms. Diggins or Mr. Burden knew the victim or his family members. Even if they did, there was no indication that it would affect the jurors' ability to be fair and impartial. This Court must assume that all jurors followed the trial court's instructions to base their verdicts only on the evidence. Accordingly, even if Petitioner's first allegation in Ground 5(a) were not procedurally defaulted, the Court would dismiss it as meritless. The MAR Court's alternative adjudication of this claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. That is, there is no United States Supreme Court precedent that would have required the MAR Court to find a constitutional error.

As for Petitioner's second allegation in Ground 5(a), during trial one of Petitioner's attorneys

alerted the trial court that he saw approximately ten jurors sitting on a bench just outside of the courtroom. (Doc. No. 8-15 at 3). The defense attorney was concerned that the jurors would think Petitioner was in custody because the attorney and prosecutors were walking in and out of the courtroom without Petitioner. (Id.). The defense attorney also noted that there were witnesses sitting outside the courtroom as well. (Id.). The attorney made it clear that he was "not indicating in any way, shape or form that there were [sic] communication." (Id.). The trial judge noted that he would speak to the courtroom deputy about it. (Id. at 4). "[P]rivate communication, contact, or tampering" with a juror is presumptively prejudicial. Remmer v. United States, 347 U.S. 227, 229 (1954). Here, despite Petitioner's conclusory allegations, there is no evidence of any juror-witness contact during trial. Furthermore, the trial court took steps to remedy any impropriety or the appearance of any impropriety. In sum, even if Plaintiff's Grounds 4(a) and 5(a) were not procedurally defaulted, the Court would dismiss them as meritless.

Finally, in Grounds 4(b) and 5(b), Petitioner alleges ineffective assistance of trial counsel for counsel's failure to object based on the allegations in Grounds 4(a) and 5(a). Because there were no errors as alleged in Grounds 4(a) and 5(a), it follows that Petitioner's ineffective assistance of counsel claims are without merit.

In sum, the Court dismisses Petitioner's Grounds 4 and 5.

C.      Petitioner's Ground 6

In Ground 6, Petitioner contends that his trial attorney "did not want to spend limited state resources to hire [an] expert to testify about scientific evidence that would clear me in this case" and "by not getting important witness[es] to testify." (Doc. No. 1 at 8). Petitioner is not entitled to relief on Ground 6. First, Ground 6 is wholly conclusory and unsupported. See Nickerson, 971 F.2d at 1136. That is, Petitioner does not explain what evidence an expert would have testified about that

-16-

would have exculpated Petitioner, nor does he articulate what witnesses counsel should have called. Petitioner raised Ground 6 in his MAR, and the MAR Court denied the claim as procedurally barred for failure to raise the claim on direct appeal and, alternatively, on the merits. (Doc. No. 8-10). Given the state court's application of the state court procedural bar, Ground 6 is procedurally defaulted and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default.

Because Petitioner's allegations are wholly conclusory, the Court simply does not have enough information to determine whether Petitioner's claim would have any merit even if it were not procedurally barred and, therefore, whether counsel's performance was deficient. In any event, even assuming that counsel's performance was deficient for failing to hire an expert or for failing to call certain witnesses, Petitioner has not shown prejudice to meet the second so-called Strickland prong, given the overwhelming evidence of Petitioner's guilt, including that he threatened to kill the victim on the day the victim was murdered, that there were witnesses to the murder who identified Petitioner as the perpetrator, and that he confessed to the murder. See Strickland v. Washington, 466 U.S. 668, 687 (1964). Therefore, the MAR Court's alternative adjudication of this claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. That is, there is no United States Supreme Court precedent that would have required the MAR Court to find a constitutional error.

In sum, the Court dismisses Petitioner's Ground 6.

D.     Petitioner's Ground 7

In Ground 7, Petitioner contends that (a) his right to present evidence in his own defense was violated when the trial court would not allow him to present scientific evidence that would have

exonerated him; and (b) his appellate counsel was ineffective for failing to challenge on appeal the trial court's failure to allow him to present exculpatory scientific evidence.

Petitioner is not entitled to relief on Ground 7. First, Petitioner's Ground 7 is procedurally defaulted. Petitioner raised Ground 7(a) in his MAR, and the MAR Court denied the claim as procedurally barred for failure to raise the claim on direct appeal and, alternatively, on the merits. (Doc. 8-9 at 8). In an attempt to show cause and prejudice to excuse the procedural default, Petitioner does assert in Ground 7(b) that his appellate counsel was ineffective for failing to raise Ground 7(a) on direct appeal.

Petitioner's assertion of an ineffective assistance of appellate counsel claim, however, is inadequate to excuse the procedural default of Ground 7(a) because the ineffective assistance of counsel claim is itself procedurally defaulted. This is because Petitioner did not raise the ineffective assistance of appellate counsel claim in his MAR. Therefore, if he were to return to the North Carolina Superior Court and raise the ineffective assistance of appellate counsel claim in a second MAR, the state court would find the claim procedurally barred by North Carolina's mandatory, and adequate and independent, procedural bar statute, N.C. GEN. STAT. §§ 15A-1419(a)(1), (a)(3), & (b). Accordingly, Petitioner's ineffective assistance of appellate counsel claim in Ground 7(b) is procedurally defaulted, and would therefore not excuse the default of Ground 7(a).

The Court further notes that even if Ground 7(a) were not procedurally defaulted, it is wholly meritless. During jury selection, one of Petitioner's attorneys informed the trial court that Petitioner wanted to speak with the court. (Doc. No. 8-14 at 211). Petitioner addressed the Court, indicating that he wished to be heard concerning a gunshot residue test. (Id.). Petitioner's attorney explained to the trial court that Petitioner believed the results of a gunshot residue test proved he did not fire a gun and, therefore, the charges should be dismissed. (Id.) The trial court ruled that, to the extent

Petitioner was making a motion to dismiss the charges, the motion was denied.  (Id. at 212).

Here, because Petitioner was represented by counsel, the trial court was not required to entertain a request directly from him.  See State v. Grooms, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000) ("Having elected for representation by appointed defense counsel, [the] defendant cannot also file motions on his own behalf or attempt to represent himself.").  In any event, the trial court allowed Petitioner's concerns to be heard and properly denied them.  The MAR Court's alternative adjudication of this claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. That is, there is no United States Supreme Court precedent that would have required the MAR Court to find a constitutional error.

In sum, the Court dismisses Petitioner's Ground 7.

E.      Petitioner's Ground 8

In Ground 8, Petitioner contends that the trial court erred in denying his motion indicating that the State's expert had not complied with discovery laws.  At trial, one of Petitioner's attorneys noted that he had received the State's expert reports, but he argued that the North Carolina laws regarding discovery entitled Petitioner to additional information about what the information in the reports meant.  (Doc. No. 8-13 at 10-11).  See N.C. GEN. STAT. § 15A-903(a)(2) (State's experts to disclose not only their reports, but also the experts' opinions and the underlying basis for the opinion).  In response, the prosecutor argued that Petitioner had been provided with reports, opinions, the basis for the opinions, and notes, and that Petitioner had access to and, in fact, had already interviewed the experts.  (Id. at 13-14).  The trial court held that the State had complied with discovery laws regarding experts, and the court denied Petitioner's motion regarding discovery.  (Id. at 17).  Petitioner subsequently did not raise the claim regarding the expert reports on direct appeal.

-19-

Petitioner raised Ground 8 in his MAR, and the MAR Court denied it based on procedural default for failure to raise the claim on direct appeal and, alternatively, on the merits. (Doc. Nos. 8-9 at 8; 8-10). Because the MAR Court found that Ground 8 was procedurally defaulted, and because Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default, Petitioner is not entitled to habeas relief in this Court.

Even if Ground 8 were not procedurally defaulted, Petitioner's Ground 8 is not cognizable on federal habeas review. As noted, supra, state court decisions on state law are not cognizable on federal habeas review unless they so infect the trial as to cause a due process violation. See Estelle, 502 U.S. at 67-68; Kibbe, 431 U.S. at 154. Here, even if Ground 8 were not procedurally defaulted, the Court would dismiss it on the merits. The MAR Court's alternative adjudication of this claim on the merits was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. That is, there is no United States Supreme Court precedent that would have required the MAR Court to find a constitutional error.

In sum, the Court dismisses Petitioner's Ground 8.

## V. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment.

**IT IS, THEREFORE, ORDERED** that:

1.    Respondent's Motion for Summary Judgment, (Doc. No. 7), is **GRANTED** and the § 2254 petition is dismissed with prejudice.

2.    It is further ordered that, pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in

order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 19, 2012

Robert J. Conrad, Jr.
Chief United States District Judge